FILED

2013 SEP 18  PM 2: 16

CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
CLEVELAND

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

DONALD WILLIAMS,
    Plaintiff,

        v.

SLM CORPORATION, INC., d/b/a "SALLIE
MAE,", AND SALLIE MAE, INC.
Defendants.

)
)
)
)
)
)
)
)
)
)

Case No.: 1:13 CV 2073

JUDGE LIOI

MAG. JUDGE BURKE

## COMPLAINT

NOW COMES the Plaintiff, Donald Williams ("Plaintiff"), by and through his undersigned attorney, and for his Complaint against the Defendant, SLM Corporation, Inc., d/b/a "Sallie Mae", and Sallie Mae, Inc., (collectively "Defendants"), states as follows:

### NATURE OF THE CASE

1) This is an action arising from violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq., as amended, the Ohio Consumer Sales Practices Act ("OCSPA"), O.R.C. § 1345.01 et seq.,and the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 et seq., to secure recovery of damages, appropriate declaratory/injunctive relief and other equitable relief against the Defendant for engaging in unfair and/or abusive acts or practices.

### JURISDICTION, VENUE & PARTIES

2) This Honorable Court has subject matter jurisdiction over the action pursuant to 15 U.S.C. §§ 1692k, 28 U.S.C. §§ 1331, 1332(d)(2) and 1337(a).

3) Venue is proper in the United States District Court for the Northern District of Ohio under 28 U.S.C. §§ 1391(b) and (c), because Defendant is a corporation with sufficient contacts with this District to subject it to personal jurisdiction.

4) Venue is also proper because Plaintiff has resided in this District at all times relevant to these claims such that a substantial part of the events giving rise to these claims occurred in this District.

5) Plaintiff is a resident of Ohio and a "consumer"/"debtor" as defined under applicable laws.

6) The Defendants, named herein, are "debt collectors" as defined in the above-cited applicable laws.

## BACKGROUND FACTS

7) Daniel Reed borrowed approximately $60,000 in school loans (referred to as "the loan") over the course of three years. Daniel Reed received the loan in three loan installments, which he originated on December 5, 2007, August 20, 2008, and April 8, 2009.

8) Plaintiff co-signed this student loan for Daniel Reed.

9) Defendants' harassing and abusive methods of collecting this loan are the basis for this legal complaint.

10) In 2012, Daniel Reed stopped making payments on his student loan and his account became past due.

11) Defendants and their subsidiaries began a campaign of abuse, harassment and intimidation against the Plaintiff to collect the loan by calling Plaintiff multiple times per day, sometimes more than 15 times in one day.

2

12) On August 20, 2012, the undersigned law firm sent a letter to Defendants, informing Defendants that its communication with Plaintiff was harassing and in violation of the Fair Debt Collection Practices Act. (See Ex. A).

13) The letter also informed Defendants that Plaintiff was represented by an attorney and that any future communication should be directed to Plaintiff's attorney, and not the Plaintiff directly.

14) The August 20, 2012 letter also informed Defendants that the loan borrower, Daniel Reed, was a current student at another university and requested that Defendants institute reasonable accommodations including a loan repayment forbearance or deferment.

15) Defendants responded to Plaintiff's attorney in a letter dated September 4, 2012, in which Defendants acknowledged that Plaintiff was represented by an attorney and agreed to cease all direct contact with Plaintiff. (See Ex. B).

16) Defendants did not respond to Plaintiff's request for a loan repayment forbearance or deferment, and did not begin any forbearance or deferment procedures.

17) Instead, Defendants continued to send letter's informing Plaintiff that the loan was past due and accruing late fees and penalties. (See Ex. C).

18) In a letter dated October 19, 2012, Plaintiff's attorney once again requested that Defendants institute a loan repayment forbearance or deferment as the borrower, Daniel Reed, was currently enrolled as a student in another university. (See Ex. D).

19) Defendants did not respond to Plaintiff's request in the October 19, 2012 letter. Instead, Defendants continued to send letter's informing Plaintiff that the loan was past due and accruing late fees and penalties. (See Ex. E).

20) Based on the foregoing, Defendants were well aware that Plaintiff was represented by an

3

attorney and that all communication should be directed to his attorney.

21) Yet despite this knowledge, beginning in approximately April 2013, Defendants began an abusive and harassing campaign against the Plaintiff, by relentlessly calling the Plaintiff on his home number and his wireless number.

22) The callers identified themselves as working for Sallie Mae and attempted to collect Daniel Reed's student loan from Plaintiff.

23) The frequency of the phone calls was extremely harassing and abusive. Defendants called the Plaintiff more than *540 times* between April 2013 and July 30, 2013. (See Ex. F and Ex. G).

24) Sometimes the Defendants called the Plaintiff more than 15 times per day. (See Ex. F and Ex. G).

25) Plaintiff began to create a log of the harassing and abusive phone calls, which he has attached to this Complaint as Exhibits F and G. (See Ex. F and Ex. G).

26) Exhibit F lists the date and time of the phone calls Plaintiff received from the Defendants on his home phone number from April 2013 to July 30, 2013, which include at least 330 calls from Defendants. Plaintiff believes he received phone calls between April 2013 to July 30, 2013 which he did not include in his home phone log, making the total number of phone calls he received at that telephone number higher than 330.

27) Exhibit G lists the date and time of the phone calls Plaintiff received from the Defendants on his wireless number from April 2013 to July 30, 2013, which total at least 206. Plaintiff believes he received phone calls between April 2013 to July 30, 2013 which he did not include in his wireless phone log, making the total number of phone calls he received at that number higher than 206.

28) Placing just one phone call to Plaintiff while the Defendants were on notice that all communication should be directed to Plaintiff's attorney violates the FDCPA. However, Defendants did not just improperly contact the Plaintiff once, but over 540 times within four months.

29) In addition to the calls themselves violating the FDCPA, the volume of the calls rises to the level of harassment and abuse under the statute.

30) Further, Defendants' repeated calls to the Plaintiff's wireless number violated the TCPA.

31) Plaintiff did not give his express permission for Defendants to contact his wireless number, yet Defendants made repeated, harassing calls to Plaintiff's wireless number. Many of these calls were made within an hour of each other.

32) Calls made by Defendants to Plaintiff's wireless number often occurred through an automated telephone dialing system.

33) Some of the calls made to Plaintiff's wireless number used an artificial or prerecorded voice as defined by the TCPA.

34) Plaintiff's attorney contacted Defendants again through a letter dated June 3, 2013, informing Defendants that its continued direct contact with the Plaintiff and its use of auto-dialers to call the Plaintiff's wireless number were in direct violation of the law. Yet, Defendants continued to contact Plaintiff directly throughout June 2013 and July 2013. (Ex. E).

35) Under the TCPA and the FCC's January 2008 Declaratory Ruling, the burden is on the Defendants to demonstrate that Plaintiff provided express consent within the meaning of the statute.

36) Defendants ongoing, improper and abusive collection activities placed a great amount of

emotional distress upon the Plaintiff.

37) Defendants' conduct was willful, knowing, intentional, in reckless disregard of the law and Plaintiff's rights, malicious and/or outrageous and was deliberately designed to oppress, abuse, harass, intimidate and/or upset.

38) Accordingly, as a direct and proximate result of Defendants' outrageous conduct, the Plaintiff suffered both emotional and economic losses.

## COUNT I

## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

39) Plaintiff incorporates the preceding paragraphs by reference here.

40) The FDCPA was enacted to "eliminate" a number of activities and conduct on the part of debt collectors such as "abusive debt collection practices by debt collectors . . . and . . . to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). To that end, the FDCPA prohibits a debt collector from "engag[ing] in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. The Act, inter alia, also states that a debt collector "may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt," 15 U.S.C. § 1692e, and "may not use unfair or unconscionable means to collect or attempt to collect any debt," 15 U.S.C. § 1692f.

41) The Plaintiff has been the object of collection activity arising from consumer debt.

42) The Defendants are debt collectors as defined by FDCPA.

43) The Defendants knowingly, intentionally, and deliberately engaged in numerous acts or omissions prohibited by the FDCPA, including, but not limited one or more of the

6

following:

(1) engaging in conduct the natural consequence of which was to harass, oppress, or abuse the Plaintiff in connection with the collection of a debt, in violation of 15 U.S.C. § 1692d;

(2) communicating directly with a consumer with respect to the debt after knowing he was represented by an attorney in violation of Section 1692c(a)(2); and

(3) failing to comply with FDCPA's general guidelines and otherwise engaging in conduct described as abusive, deceptive, and unfair debt collection practices in violation of 15 U.S.C. § 1692.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff respectfully requests that the Court grant Plaintiff the following relief:

A. Plaintiff demands judgment for damages against Defendants for actual, compensatory and statutory damages, and appropriate equitable relief;

B. Injunctive relief prohibiting such violation of the FDCPA by Defendants in the future pursuant 15 U.S.C. § 1692k;

C. An award of attorneys' fees and costs to counsel for Plaintiff, and

D. Such other relief as the Court deems just and proper.

## COUNT II

## VIOLATIONS OF THE OHIO CONSUMER SALES PRACTICES ACT

44) Plaintiff incorporates the preceding paragraphs by reference here.

45) Defendants and its subsidiaries were "suppliers" engaged in a "consumer transaction"

with the Plaintiff at all relevant times, as defined by the OCSPA.

46) Plaintiff was a "consumer" as defined by the OCSPA at all relevant times.

47) The improper, abusive and harassing debt collection practices committed by the Defendants and its subsidiaries constitute unfair and deceptive practices in violation of the OCSPA.

48) Plaintiff was damaged by this conduct and is entitled to statutory damages per violation as well as damages for emotional distress.

49) Defendants and its subsidiaries acted intentionally and knowingly, entitling Plaintiff to reasonable attorney's fees and costs.

<u>**PRAYER FOR RELIEF**</u>

WHEREFORE Plaintiff respectfully requests that the Court grant Plaintiff the following relief:

A. Plaintiff demands judgment for damages against Defendants for actual, compensatory and statutory damages, and appropriate equitable relief;

B. Injunctive relief prohibiting such violation of the OCSPA by Defendants in the future,

C. An award of attorneys' fees and costs to counsel for Plaintiff, and

D. Such other relief as the Court deems just and proper.

<u>**COUNT III**</u>

<u>**NEGLIGENT VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT**</u>

50) Plaintiff incorporates the preceding paragraphs by reference here.

51) Congress enacted the Telephone Consumer Protection Act ("TCPA") in response to the

8

growing number of consumer complaints regarding certain telemarketing practices.

52) The TCPA regulates the use of automated telephone equipment, or "auto dialers." The TCPA specifically prohibits the use of auto dialers to make any call to a wireless number in the absence of an emergency or the prior express consent of the called party.

53) Such calls are prohibited because automated calls are a greater nuisance and invasion of privacy than live solicitation calls and such calls can be costly and inconvenient as wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.

54) Plaintiff did not give his express permission for Defendants to contact his wireless number. However, Defendants and their subsidiaries made repeated, harassing calls to Plaintiff's wireless number. Many of these calls were made within an hour of each other.

55) Calls made by Defendants to Plaintiff's wireless number often occurred through an automated telephone dialing system.

56) Often calls Defendants made to Plaintiff's wireless number used an artificial or prerecorded voice as defined by the TCPA.

57) These calls made to Plaintiff's wireless number did not constitute an emergency as defined by the TCPA.

58) Defendants' calls to Plaintiff's wireless number violated the TCPA.

59) The ongoing, improper and abusive collection activities placed a great amount of emotional distress upon the Plaintiff.

60) The foregoing acts and omissions of Defendants constitute numerous and multiple negligent violations of the TCPA.

61) As a result of Defendants' negligent violations of the TCPA, Plaintiff is entitled to an

award of $500 in statutory damages for each and every call in violation of the statute.

62) Plaintiff is also entitled to and does seek injunctive relief prohibiting Defendants' violation of the TCPA in the future.

63) Plaintiff is entitled to and does seek an award of attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff respectfully requests that the Court grant Plaintiff the following relief:

A. As a result of Defendants' negligent violations of the TCPA, Plaintiff seeks $500 in statutory damages for each and every call that violated the TCPA;

B. Injunctive relief prohibiting such violation of the TCPA by Defendants in the future,

C. An award of attorneys' fees and costs to counsel for Plaintiff, and

D. Such other relief as the Court deems just and proper.

## COUNT IV

## KNOWING AND/OR WILLFUL VIOLATIONS OF THE TELEPHONE

## CONSUMER PROTECTION ACT

64) Plaintiff incorporates the preceding paragraphs by reference here.

65) The foregoing acts and omissions of Defendants constitute numerous and multiple knowing and/or willful violations of the TCPA.

66) As a result of Defendants' knowing and/or willful violations of the TCPA, Plaintiff is entitled to treble damages of up to $1,500 for each and every call in violation of the statute.

10

67) Plaintiff is also entitled to and does seek injunctive relief prohibiting Defendants' violation of the TCPA in the future.

68) Plaintiff is entitled to and does seek an award of attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff respectfully requests that the Court grant Plaintiff:

A. As a result of Defendants' willful violations of the TCPA, Plaintiff seeks treble damages, of up to $1,500 in statutory damages for each and every call that violated the TCPA;

B. Injunctive relief prohibiting such violation of the TCPA by Defendants in the future,

C. An award of attorneys' fees and costs to counsel for Plaintiff, and

D. Such other relief as the Court deems just and proper.

Respectfully Submitted,

Donald Williams,

By: _Melisa Brabender_

Plaintiff's Attorney

Jeffrey Antonelli
Melissa Brabender
Antonelli Law
100 North LaSalle Street
Suite 2400
Chicago, Illinois 60602
(312) 201-8310 (t)
(888) 211-8624 (f)

11